IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOSHUA MOTEN, | ] |
| Plaintiff, | ] |
| v. | ] |
| | ] Case No.: 1:14-786-KOB |
| MAVERICK TRANSPORTATION LLC, | ] |
| Defendant. | ] |

# MEMORANDUM OPINION

This case arises out of Defendant Maverick Transportation LLC's termination of Plaintiff Joshua Moten. Mr. Moten is a member of the Marine Corps Reserve and alleges that Maverick unlawfully terminated him because of his military obligations. He brings suit against Maverick under the Uniform Services Employment and Re-employment Rights Act of 1994 ("USERRA"). *See* 38 U.S.C. § 4301 *et seq*. This matter is now before the court on Maverick's Motion for Summary Judgment and Motion to Strike Mr. Moten's Declaration. (Docs. 14 & 22, respectively). For the reasons discussed below, this court will **DENY** both of Maverick's motions.

## I. Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary

judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254 (1986); *see Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted). This is because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citation and internal quotation marks omitted). However, if the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## II. Background

On October, 31, 2013, Mr. Moten applied for employment as a truck driver with

Maverick. Shortly thereafter, Maverick hired Mr. Moten and assigned him to begin training in Maverick's flatbed trailer division. During training, Mr. Moten received instruction on how to safely operate a semitrailer and properly cover a load with a tarp to prevent damage from the elements. After successfully completing the training, Mr. Moten received approval to begin operating his own tractor-trailer. Upon graduation, Maverick assigned Mr. Moten a truck and instructed him to report to Fleet Manager Lou Shoults in the Maverick terminal in North Little Rock, Arkansas.

As instructed, Mr. Moten reported to Mr. Shoults and began operating a truck in January of 2014. Shortly after beginning to haul his own loads, however, Mr. Moten began to have performance issues. First, Mr. Moten failed to call in to work on January 13, 2014, to receive his next work assignment. Mr. Shoults was unable to get in contact with Mr. Moten until the afternoon of January 14, 2014. Although Mr. Moten had failed to call in, Mr. Shoults took no disciplinary action against him and simply gave Mr. Moten his next assignment.

Mr. Moten's struggles as a driver continued though, and, on January 17, 2014, Mr. Moten had his first accident. Mr. Moten had been driving in Houston, Texas when he turned too tightly while cornering, striking a concrete barrier with his trailer. The accident damaged the trailer's tire and tarp boxes, requiring Maverick to send a vendor to the accident scene to repair the trailer before it could be driven. After being stranded for a day in Houston waiting for repairs to be completed, Mr. Moten delivered his load and drove back to Maverick's terminal in North Little Rock. Upon Mr. Moten's return, Mr. Shoults inspected the trailer and discovered that Mr. Moten had failed to properly secure and tarp his load. Mr. Shoults brought the issue to Mr. Moten's attention and instructed him on proper methods for covering his trailer. Mr. Shoults also

required Mr. Moten to complete additional training on driving. In that same conversation, Mr. Moten asked if he would be terminated for the accident. Mr. Shoults responded that most new drivers are involved in an accident and that Mr. Moten was not at risk of being terminated. After completing the additional training, Mr. Moten resumed driving for Maverick.

On Monday, February 3, 2014, Mr. Moten received approval from Mr. Shoults to take time off to attend Marine Corps Reserve training on Thursday, February 6, 2014. Mr. Moten told Mr. Shoults that his training would last till the weekend and that he would be available to return to work on Monday, February 10, 2014 at 6:00 A.M. On February 10, however, Mr. Moten did not call in at 6:00 A.M. to receive his next driving assignment as planned, and Mr. Shoults was unable to reach him until 11:00 A.M. When Mr. Shoults did reach Mr. Moten, he told him to pickup a load in Rainsville, Alabama. Although Rainsville is roughly seventy miles from his home, Mr. Moten did not arrive there until six hours later. When he did arrived, Mr. Moten again asked Mr. Shoults if he was "anywhere near close to being fired." Mr. Shoults responded that Mr. Moten was not close to being fire and that he would let Mr. Moten know if he needed to worry about being terminated. Mr. Shoults documented Mr. Moten's failure to check in on time but again took no disciplinary action.

On February 24, 2014, Mr. Moten received approval to take time off for additional Marine Corps Reserve training beginning on March 5, 2014. On March 3, 2014, two days before Mr. Moten's training began, Mr. Moten was involved in his second accident. While positioning his truck to be unloaded in Fort Worth, Texas, Mr. Moten hung his trailer up on a set of railroad tracks, damaging the trailer in the process. The damage to his trailer forced Mr. Moten to wait overnight for a mechanic to repair his trailer, causing Mr. Moten to miss driving his next load to

Fort Smith, Arkansas.  Because he missed the load to Fort Smith, Maverick assigned Mr. Moten a different route and instructed him to drive a load from Grand Prairie, Texas to a Home Depot store in Little Rock, Arkansas.

After picking up his load in Grand Prairie, however, Mr. Moten's bad luck continued. While driving to Little Rock, Mr. Moten's truck's warning system alerted him that a tire was leaking air.  Mr. Moten pulled the truck over at a truck stop and called Maverick's after-hours hotline for advice on how to proceed.  Maverick's phone operator instructed Mr. Moten to wait and see if the leak continued.  Mr. Moten waited overnight at the truck stop, and, upon waking, discovered that the tire had gone completely flat.  At 10:03 A.M. on March 5, 2014, Mr. Moten entered a message into Maverick's communication system alerting Maverick that his tire was flat and that his truck could not be driven until it was repaired.  After learning that Mr. Moten was delayed, Mr. Shoults sent him a message, telling him to bring his load straight back to the Maverick terminal rather than dropping the load off at the Home Depot in Little Rock.  Once the trailer's tire was repaired, Mr. Moten drove to the Maverick terminal.  Although the Parties agree that Mr. Moten arrived in North Little Rock on March 5, 2015, the Parties dispute the events that followed.

According to Mr. Shoults, someone sent him an email message when Mr. Moten arrived at the terminal, informing him that Mr. Moten had failed to properly tarp his load.  Based on the message, Mr. Shoults asked Mr. Moten to come to his office and told him to remain there while he inspected Mr. Moten's truck.  As he had been informed, Mr. Shoults found the load to be improperly tarped.  Mr. Shoults then inspected the cab of the truck and discovered greasy chains and binding equipment strewn around the inside of the cab instead of stored on the "headache

5

rack"—a rack on the back of the truck used to store securing materials. In addition to the greasy equipment, Mr. Shoults also saw that Mr. Moten's cab was in disarray with trash and loose items lying on the floor in violation of Maverick's safety policies.

Mr. Shoults returned to the office and questioned Mr. Moten about the railroad track accident that had happened in Forth Worth. In response, Mr. Moten appeared confused and blamed the accident on the personnel at the Fort Worth delivery site. Mr. Shoults then asked Mr. Moten why he failed to properly tarp his load, to which Mr. Moten failed to offer an explanation. Finally, Mr. Shoults asked Mr. Moten why his truck was in such disarray. Again, Mr. Moten failed to offer an explanation.

Mr. Shoults then left the office to speak with Fleet Operations Manager Lea Ann Lindsey and Director of Flatbed Operations Joe Johnson. Mr. Shoults, Ms. Lindsey, and Mr. Johnson discussed Mr. Moten's overall performance record and ultimately agreed that Mr. Moten should be terminated. Mr. Shoults then returned to his office and told Mr. Moten that Maverick was "letting him go for safety and performance." (Doc. 14-5, at 50). After terminating Mr. Moten, Mr. Shoults bought him a bus ticket back to Alabama so that he could try to make it back in time for Marine Corps Reserve training.

Mr. Moten's version of the events of that day significantly differs. Mr. Moten agrees that Mr. Shoults told him to come to Mr. Shoults' office when he arrived at the Maverick terminal but disagrees with Mr. Shoults' account of what transpired after he arrived.

According to Mr. Moten, after following Mr. Shoults into the office, Mr. Shoults told him that he was doing well as a driver but that Maverick was terminating him from employment because "we just can't make those times." (Doc. 14-8, at 35). Mr. Moten interpreted Mr.

Shoults' statement to be referring to his drill times with the Marine Corps Reserve.  Mr. Shoults then told Mr. Moten that Maverick would buy him a bus ticket scheduled to leave the afternoon of March 6, 2014—the day after Mr. Moten's drill started.  Mr. Moten testified that Mr. Shoults never left the room to inspect his truck and that Mr. Shoults did not cite either Mr. Moten's work performance or safety record as the basis for Mr. Moten's termination.  Mr. Moten also disputes Mr. Shoults' testimony that his load was improperly tarped and that his truck cab was in disarray.  Additionally, Mr. Moten admits that he had kept binding equipment in his truck but stated that he only did so because he had been trained to bring the equipment into the cab when he encountered cold weather.

Following his termination from employment with Maverick, Mr. Moten brought the current suit.

## II.  Discussion

**Motion to Strike**

Maverick moves to strike Mr. Moten's declaration because it was "not sworn and notarized before a Notary Public."  (Doc. 22).  Maverick's motion, however, is due to be denied because 28 U.S.C. § 1746 does not require verification by a notary public for a declaration to be valid.  Rather, a declarant must only declare "under penalty of perjury" that his statement is true and correct.  28 U.S.C. § 1746.  In the present case, Mr. Moten's declaration satisfies those requirements.  Therefore, Maverick's motion is due to be **DENIED**.

**Motion for Summary Judgment**

USERRA prohibits an employer from discriminating against a person on the basis of the person's military service through denying the person "initial employment, reemployment,

retention in employment, promotion, or any benefit of employment . . . ." 38 U.S.C. § 4301. To establish a prima facie case of discrimination under USERRA, Mr. Moten must demonstrate that his military membership or obligation was a motivating factor in Maverick's decision to terminate him. *See Coffman v. Chugach Support Serv., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005). If Mr. Moten establishes his prima facie case, the burden shifts to Maverick to "prove the affirmative defense that legitimate reasons, standing alone, would have induced [it] to [terminate Mr. Moten]." *Id.* at 1238–39. If Maverick proves its affirmative defense, it is entitled to summary judgment on Mr. Moten's USERRA claim.[1] *See id.* at 1239; *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

In determining whether a plaintiff has established his prima facie case, courts consider a variety of considerations, such as: "(1) the temporal proximity between the plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and other actions of the employer; (3) an employer's expressed hostility towards members of the protected class combined with its knowledge of the plaintiff's military activity; and (4) disparate treatment of similarly situated employees." *Ward v. United Parcel Service*, 580 F. App'x 735, 738 (11th Cir. 2014); *see Coffman*, 411 F.3d at 1238. After reviewing the record in this case, the court concludes that Mr. Moten presents sufficient evidence

---

[1] In his response, Mr. Moten contends that if Maverick proves its affirmative defense, then he "has the opportunity to show that . . . Maverick's asserted reason could reasonably found to be pretextual." (Doc. 18, at 17). In support of his argument that pretext analysis is appropriate under Section 4311 of USERRA, Mr. Moten cites an Eleventh Circuit opinion in which the Court includes pretext analysis in discussing the plaintiff's USERRA claim. *See Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 835 (11th Cir. 2013). *Landolfi*, however, is a nonbinding unpublished opinion. Further, the Eleventh Circuit has never in a published opinion included pretext analysis in the framework of a Section 4311 USERRA claim. *See Coffman*, 411 F.3d at 1238 (not including pretext in its analysis of the plaintiff's USERRA claim). As such, this court concludes that pretext is not a valid analytical component of a USERRA claim.

upon which a reasonable jury could infer that his military obligation was a motivating factor in his termination.

Two primary factors support Mr. Moten's position.  First, Maverick terminated Mr. Moten on the very day of his Marine Corps Reserve training.  As such, a close temporal proximity exists between Mr. Moten's military activity and Maverick's adverse employment action.  Second, accepting Mr. Moten's testimony as true, which the court must do at the summary judgment stage, Mr. Moten presents evidence of inconsistencies between Maverick's proffered reason for terminating him and Maverick's other actions.

According to Mr. Shoults, Maverick terminated Mr. Moten because he had failed to properly tarp his load, stored dirty binding materials in his cab, left his cab in a state of "disarray," and failed to offer an explanation of his accident in Fort Worth.  However, according to Mr. Moten, Mr. Shoults never left his office to inspect Mr. Moten's truck and, therefore, would not have known about the state of Mr. Moten's trailer and cab.  Additionally, Mr. Moten testified that he had properly tarped his load and that his cab was not in a state of disarray.  Mr. Moten also testified that Mr. Shoults did not cite his work performance or safety record as the basis for his termination.  Rather, according to Mr. Moten, Mr. Shoults had said that Maverick was terminating Mr. Moten because "[w]e can't make those times."  Although the exact meaning of that statement is unclear, a reasonable jury could infer that Mr. Shoults was referring to Maverick's inability to work with Mr. Moten's military training schedule.

As to the other two factors, this court concludes that they do not support Mr. Moten's claim.  Maverick has a strong reputation and history of intentionally recruiting veterans, guardsman, and reservists, and Mr. Moten fails to present evidence that Maverick is hostile

9

towards service members. Additionally, Mr. Moten fails to present evidence of disparate treatment of similarly situated employees and did not identify any similarly situated comparator. Nevertheless, Mr. Moten need not prove *every* factor to establish his prima facie case. *See Guy v. Ala. Power Co.*, No. 2:13cv08-MHT, 2015 WL 1650204, at *9 (M.D. Ala. April 14, 2015).

Though the evidence that Maverick discriminated against Mr. Moten based on his military obligations is far from overwhelming, the court concludes that Mr. Moten's testimony is sufficient to allow a reasonable jury to find for him. Additionally, although Mr. Moten's testimony is self-serving, that alone does not permit the court to disregard it at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). Therefore, the court concludes that Mr. Moten has presented sufficient evidence to establish his prima facie case.

Because Mr. Moten established his prima facie case, the burden shifts to Maverick to prove that legitimate reasons, standing alone, would have induced it to terminate Mr. Moten' employment.[2] *See Coffman*, 411 F.3d at 1238–39. In its motion for summary judgment, Maverick states that it would have terminated Mr. Moten regardless of his military obligations because of his poor performance and repeated safety violations. Specifically, Maverick points out that Mr. Moten had been involved in two accidents in the preceding three months, had

---

[2] In his response, Mr. Moten contends that Maverick cannot prove its affirmative defense because Mr. Shoults' statement that "[w]e can't make those times" establishes that Maverick terminated Mr. Moten because of his military obligations. However, to establish the affirmative defense, Maverick need only show that legitimate reasons, standing alone, *would have* led it to terminate Mr. Moten—not that legitimate reasons, standing alone, *did in fact* lead it to terminate Mr. Moten. *See Coffman*, 411 F.3d at 1238–39. In other words, Maverick can prove the affirmative defense even if it did terminate Mr. Moten based on his military obligations so long as other legitimate reasons, standing alone, would have led it to take the same action. As such, Mr. Shoults' alleged statement to Mr. Moten is irrelevant.

improperly secured and tarped his cargo, and failed to properly secure and inspect his trucking equipment.  Although the court concedes that Mr. Moten's performance was unsatisfactory, the court concludes that Maverick has not carried its burden of proving that it would have terminated Mr. Moten based on his performance and safety record alone.

To establish its affirmative defense, Maverick must prove that it would have terminated Mr. Moten from employment based only on legitimate reasons.  Thus, the question is not whether Mr. Moten was a good employee or even a satisfactory employee but, instead, whether his performance alone would have led Maverick to terminate him.  Although Maverick presents evidence that Mr. Moten's performance was deficient in some regards, it fails to present evidence that those deficiencies would have led it to terminate Mr. Moten.  Maverick does not point to any disciplinary policy stating that an employee will be terminated after his second accident.  Nor does it offer a comparator who it terminated for engaging in similar misconduct.  Although Maverick avers in its motion for summary judgment that it would have terminated Mr. Moten for his deficient performance, this contention is not *proof* that it would have done so.  *See Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 547 (5th Cir. 2013) ("The employer bears the burden of proof for any affirmative defenses upon which it relies.").

Without evidence showing that it typically terminates employees for committing violations similar to Mr. Moten's, Maverick cannot prove that it would have terminated Mr. Moten based solely on his performance and safety record.

Because Maverick has not presented such evidence, the court concludes that genuine issues of material fact exist as to whether legitimate reasons, standing alone, would have induced Maverick to terminate Mr. Moten.  Therefore, Maverick has not proven its affirmative defense,

and its motion for summary judgment is due to be **DENIED**.

## II. Conclusion

For the reasons discussed above, the court will **DENY** Maverick's motion for summary judgment and motion to strike Mr. Moten's declaration.

**DONE** and **ORDERED** this 29th day of June, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE