IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOSHUA MOTEN, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | |
| ] | Case No.: 1:14-cv-00786-KOB |
| MAVERICK TRANSPORTATION, ] | |
| LLC, ] | |
| ] | |
| Defendant. ] | |
| ] | |

**MEMORANDUM OPINION**

This matter is before the court on Defendant Maverick Transportation, LLC's "Motion for Reconsideration." (Doc. 27). On February 5, 2015, Maverick moved for summary judgment on Plaintiff Joshua Moten's military discrimination claim under the Uniformed Services Employment and Re-employment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq*. (Doc. 14). This court denied that motion, holding that Mr. Moten had presented sufficient evidence to create a genuine issue of material fact as to whether he could establish his *prima facie* case, and that Maverick failed to present sufficient evidence to establish, as an affirmative defense under USERRA, that legitimate reasons, *standing alone*, would have induced it to terminate Mr. Moten. (Doc. 26; *see Coffman v. Chugach Support Serv., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005) (explaining the plaintiff's burden to establish his *prima facie* case under USERRA, with the burden then shifting to the employer to prove the affirmative defense).

In its motion to reconsider, Maverick presents comparator evidence not previously presented to this court, and Maverick argues that this comparator evidence establishes that it

would have terminated Mr. Moten regardless of his military obligation.  For the reasons discussed in this Memorandum Opinion, the court will DENY Maverick's motion for reconsideration.  As an *alternative* ruling, the court FINDS that reconsideration of the motion for summary judgment in light of the newly presented evidence would not change the result; the motion for summary judgment is still due to be DENIED.

"[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 440 F. Supp. 2d 1256, 1267-8 (N.D. Ala. 2006).  Court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," and motions for reconsideration should not be an automatic response to an adverse ruling.  *See Am. Ass'n of People with Disabilities v. Hood*, 278 F. Supp. 2d 1337, 1339 (M.D. Fla. 2003) (internal citations omitted).  Neither should they be "a platform to relitigate arguments previously considered and rejected."  *Reuter,* 440 F. Supp. 2d at 1268 n.9.  Rather, they should be "only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."  *Summit Medical Center of Alabama, Inc. v. Riley,* 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).

In the present case, Maverick specifically acknowledges that the evidence it now presents was in its possession at the time it filed its motion for summary judgment.  (D's Br in support of MTR, Doc. 28, at 2 n. 1).  Mr. Moten argued in his opposition brief that supervisor Shoults treated him differently from similarly situated employees by terminating him without first giving him verbal or written warnings, as he did other employees who presumably had no military obligations.  (Doc. 18, at 26).   Thus, Mr. Moten raised at summary judgment the issue of

disparate treatment of similarly situated employees. The evidence that Maverick now presents to address that issue includes excerpts from Maverick's own disclosure documents and employee performance documents, all of which Maverick possessed at and prior to the summary judgment stage. Because Maverick lost at the summary judgment stage without presenting evidence it could have presented at that time, it is now asking for a second bite at the proverbial judicial apple, a second chance to do what it could have done before but did not. However, the evidence upon which Maverick bases its motion to reconsider is not newly discovered or newly available, and thus, that evidence does not meet the standard supporting reconsideration. *See Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (holding that a court should not grant a motion to reconsider based on previously unsubmitted evidence absent a showing that the evidence had previously been unavailable). Therefore, the court FINDS the motion for reconsideration is due to be DENIED.

The court notes that Mr. Moten stated in his brief that he does not oppose the court's considering the additional evidence Maverick submitted so as to "save the parties and the Court time and resources to resolve this issue now, rather than at trial." (P's Resp. Br. on MTR Doc. 30, at 2). This court applauds any attempt to resolve matters at the earliest appropriate juncture. Accordingly, as an *alternative ruling* only, the court reconsiders the evidence newly presented; despite its alternative nature, such a ruling may assist in some way to resolve the matter.

Because Mr. Moten challenges the framework laid out by this court in its order on Maverick's motion for summary judgment, however, the court will address USERRA's burden-shifting framework for discrimination based on circumstantial evidence before addressing the impact of Maverick's additional evidence. The burdens of proof for USERRA actions are based

3

on and mirror those of the National Labor Relations Act as set forth in *National Labor Relations Bd. v. Transp. Mgmt. Corp.,* 462 U.S. 401 (1983) modified by *Dir., Office of Workers' Comp. v. Greenwich Collieries,* 512 U.S. 267 (1994); *see Sheehan v. Dep't of Navy,* 240 F.3d 1009, 1013 (Fed. Cir. 2001) (stating that "[p]recedent interpreting and applying the USERRA is sparse" and that courts applying USERRA have adopted the evidentiary scheme for cases arising under the NLRA set out in *Transp. Mgmt.*).

Under this framework, the plaintiff bears the initial burden of proving by a preponderance of the evidence that his military status was a motivating factor in the defendant's adverse employment action. *See Coffman*, 411 F.3d at 1238. Once the plaintiff establishes his *prima facie* case, the burden shifts to the defendant to establish its affirmative defense by proving that "legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* (citing *Sheehan*, 240 F.3d at 1014). This framework applies to both "'dual motive' cases (in which the agency defends on the ground that, even if an invalid reason played a part in the adverse action, the same action would have been taken in the absence of the invalid reason) and so-called 'pretext' cases (in which the agency defends on the ground that it acted only for a valid reason)." *Sheehan*, 240 F.3d at 1014.

The court notes that this framework is different from that applied in Title VII cases. For example, in Title VII's framework, the burden of articulating a legitimate reason for the employment action shifts to the employer after the establishment of a *prima facie* case, but the ultimate burden of persuasion remains with the plaintiff. After the employer articulates a legitimate, non-discriminatory reason and rebuts the presumption of illegal discrimination arising from the establishment of the *prima facie* case, the plaintiff has the burden of proving that the

proffered reason is pretext for discrimination. *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir. 2010).

By contrast, in USERRA's framework, if the plaintiff establishes his *prima facie* case, the burden of persuasion actually shifts to the employer to prove by a preponderance of the evidence its "I would have done it for a legal reason, anyway" affirmative defense. *See Sheehan,* 240 F.3d at 1014.

As a further example of differing frameworks, in mixed motive Title VII discrimination (but not retaliation) cases after the Civil Rights Act of 1991, plaintiffs who prove that the illegitimate factor was one of the motivating factors and that all of the defendant's legitimate, articulated reasons are pretextual are entitled to a verdict in their favor. *See* 42 U.S.C. § 2000e-2(m); *see also Pennington v. City of Huntsville,* 261 F.3d 1262 (11th Cir. 2001) (explaining that the 1991 Act reinstated limited damages for discrimination based on "race, color, religion, sex and national origin ..., even though other factors also motivated the practice."). Such plaintiffs are entitled to certain types of relief, such as declaratory relief, injunctive relief, and attorney's fees and costs, regardless of whether the employer proves a mixed motive existed. *See* 42 U.S.C. § 2000e-5(g)(2)(B)(i). If, in such cases, the employer proves by a preponderance of the evidence that a mixed motive existed—that it would have taken the same action regardless of the impermissible discriminatory motivation—then the plaintiff is *not* entitled to monetary damages but is still entitled to the other relief previously mentioned. *Id.* Put another way, the "I would have done it for a legal reason, anyway" defense is a *defense to monetary damages* but not a defense to all liability.

By contrast, in USERRA's framework, the burden of persuasion shifts to the employer

after the establishment of the *prima facie* case regardless of whether the case is a mixed motive case or a pretext case, and the affirmative defense, if successful, is a *defense to liability*. See *Coffman,* 411 F.3d at 1239 (finding that summary judgment in favor of the employer was appropriate where the employer had shown it would have made the same decision absent the employee's miliary status).

In his response to the motion to reconsider, Mr. Moten contends that an additional step exists in the USERRA burden-shifting framework; specifically, Mr. Moten contends that if Maverick establishes its affirmative defense, the burden then shifts back to him to establish that the defendant's asserted legitimate reason for its adverse employment action is pretextual. The court disagrees that, in USERRA cases, the burden shifts back to the plaintiff after the *prima facie* case and the proof of the affirmative defense; Mr. Moten's argument appears to be confusing the frameworks of Title VII and USERRA. Indeed, the court is perplexed that Mr. Moten would want to take on such a burden when it behooves him to allow the burden to remain squarely on Maverick's back. Unlike the Title VII framework, the USERRA framework places on the employer not just the light burden of production but the heavy burden of persuasion/proof.

In a footnote in its Memorandum Opinion finding that summary judgment was due to be denied, this court noted that "the Eleventh Circuit has never in a published opinion included pretext analysis in the framework of a Section 4311 USERRA claim" and proceeded to state that "pretext is not a valid analytical component of a USERRA claim." (Doc. 25, at 8 n.1). Mr. Moten contends that this court is mistaken and points to the following section of *Coffman*:

> When the employee has met this burden, the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action. <u>This burden-shifting

6

> framework applies to both so-called "dual motive" cases and so-called "pretext" cases. Thus in USERRA actions there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the agency action, upon which the agency must prove, by a preponderance of evidence, that the action would have been taken despite the protected status.

*Coffman*, 411 F.3d at 1238–39 (emphasis added; internal citations and quotations omitted).

The court desires to clarify the quoted language in its footnote, which it acknowledges to be imprecise. When this court stated that "pretext is not a valid analytical component of a USERRA claim," it meant, but perhaps failed to say clearly, that the USERRA framework *does not call for a separate pretext step* with the burden shifting back to the plaintiff if the employer meets its burden of proving an affirmative defense. Rather, this quoted section of *Coffman* provides the exact opposite. Under the USERRA framework, once the plaintiff establishes his *prima facie* case, the burden shifts to the employer to establish that it would have made the same adverse employment decision for a legitimate reason, anyway. As the employer attempts to prove its affirmative defense, the plaintiff certainly has the opportunity to present evidence opposing the employer's arguments and evidence regarding its affirmative defense, including evidence that the supposedly legitimate additional reason proffered was pretextual.

The key here is *not* whether a plaintiff then has the right to present evidence opposing the affirmative defense—he does—but the key is, instead, *who has the burden of proof*. The burden of *proving* the affirmative defense—here, that the legitimate reason, standing alone, would have induced it to fire Mr. Moten— rests on the employer; the mere articulation of another reason that *is* legitimate for firing the plaintiff does not shift back to the plaintiff the burden of proving that the affirmative defense is not legitimate. As such, the court did consider the evidence of pretext set out in Mr. Moten's brief (doc. 18, at 27-30) in addressing and ruling on Maverick's

7

affirmative defense, and it considers that evidence at this juncture, too.  The failure of the Memorandum Opinion to specifically refer to the matters listed in the pretext section of Mr. Moten's brief does not mean that the court did not consider them in ruling on the affirmative defense**.**

In light of the evidence presented, the court determined that genuine issues of material fact exist and that Maverick has not met his burden of proving that, as a matter of law,  legitimate reasons, standing alone, would have induced it to terminate Mr. Moten.  Accordingly, the case appropriately goes to the jury.

The court acknowledges Mr. Moten's assertion that the unpublished decision of *Landolfi v. City of Melbourne*, 515 F. App'x 832 (11th Cir. 2013) (*per curiam*) includes a pretext analysis, which he characterizes as supporting his understanding of the burden-shifting framework in USERRA cases.  As the court noted in its original Memorandum Opinion addressing the motion for summary judgment, the *Landolfi* opinion is unpublished, and therefore, cannot represent controlling precedent.  See *U.S. v. Bonner,* 712 F.2d 1418 (11th Cir. 1983) (citing Rule 36-2 of the U.S. Ct. of App. 11th Cir.).  In any case, the Court of Appeal's consideration and analysis of pretext evidence in the *Landolfi* decision does not necessarily mean that it was following the Title VII framework where the burden of proof shifts back to the plaintiff to prove pretext.  As this court has explained, a consideration of evidence of pretext can occur in addressing whether the employer met its burden of proving its affirmative defense.  Regardless of whether Mr. Moten mischaracterizes the Court of Appeals' analysis in *Landolfi,* that unpublished case cannot change the USERRA framework set forth in published, controlling caselaw.

In sum, Mr. Moten is wrong in arguing that, after Maverick presents its supposedly

legitimate reason(s) for firing him, the burden shifts back to him to prove pretext.

Having set forth the correct USERRA framework, the court will now examine the merits of Maverick's motion to reconsider. As stated above, Maverick attached additional evidence to its motion for reconsideration that it claims establishes, as an affirmative defense, that it would have terminated Mr. Moten based solely upon legitimate reasons. This evidence consists of the employment and termination records of eight separate comparators, whom Maverick claims are similarly situated to Mr. Moten and whom Maverick treated similarly absent military obligations. As part of its alternative ruling, for the reasons explained below, the court FINDS that none of those eight comparators is similarly situated to Mr. Moten.

The Eleventh Circuit has explained that a "court can infer discriminatory motivation from a variety of considerations, such as ... 'disparate treatment of certain employees compared to other employees with similar work records or offenses.'" *Coffman,* 411 F.3d at 1238 (quoting *Sheehan,* 240 F.3d at 1014). The inverse of that statement is that where the employer treated similarly other employees with similar work records or offenses but who did not have military obligations, then that similar treatment supports the employer's affirmative defense. The dearth of USERRA cases results in a corresponding dearth of cases with "similarly situated" analyses in the USERRA context. However, that issue has been exhaustively addressed in the Title VII context of employment discrimination, and the Eleventh Circuit's discussion of which employees are similarly situated for use as comparators provides a helpful guide. The Eleventh Circuit stated that "to determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Burke-Fowler v. Orange Cnty, Fla.,* 447 F.3d 1319, 1323 (11th Cir. 2006)

9

(quoting *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999)).  Courts evaluating this issue should look at the "quantity and quality of the comparator's misconduct." *Burke-Fowler,* 447 F.3d at 1323.

Maverick claims that it would have terminated Mr. Moten regardless of his military obligations because of his poor performance and repeated safety violations.  The reasons supervisor Shoults gave in his deposition for the decision to terminate Mr. Moten were as follows: Mr. Moten's tarp half covered his load so that the uncovered part of the load could get wet; the inside of the cab of Mr. Moten's truck was filthy and was in disarray with greasy chains and binders that were a safety hazard on the cab floorboards and that should have been stored on a rack outside the cab; Mr. Moten had no solid explanation for the tarp problem and the disarray of his truck; and Mr. Moten seemed "disoriented" in discussing his recent Ft. Worth accident which involved getting hung on the railroad tracks, and he gave a poor explanation, blaming the accident on employees of the customer who told him to take that route. (Shoults Dep. Doc. 17-3, at 28-33).  The Ft. Worth accident was Mr. Moten's second accident on the job in the preceding three-month period.  Shoults was not assigned to the safety department that analyzed accidents for fault and, when discussing Mr. Moten's termination, he did not specifically refer to the prior accident except to the extent that it may have been encompassed by his remarks: "There was the accumulation of what had happened" and  "I'm not ignoring what all brought him to this point." (Shoults Dep. Doc. 17-3, at 23 p. 87 & 29 p. 112).

The court notes that Mr. Moten disputes that his load was half-tarped, that his truck cab was filthy and in disarray, that chains were in the cab, that he and Shoults discussed the tarp or the cab disarray, and that Shoults asked him about the Ft. Worth accident.  He also claims that he

was trained to place binders in the cab in cold weather.  (Moten Aff. 17-1, at 1-2). In light of Mr. Moten's dispute of the specific facts upon which Shoults bases the termination, the court is not convinced that any *undisputed* legitimate basis for the termination remains to use in a comparator analysis.  However, in a desire to be thorough and in hopes that this analysis may somehow clarify the issues for the parties and assist them in resolving this matter, the court will proceed.

      The first comparator Maverick offered is Donald Allen, whom Maverick terminated for tailgating a female motorist and flashing his high beams at the motorist for more than three miles on the highway while she was going speed limit, causing her to record his license plate number and to complain on social media that she felt her safety was in jeopardy during the tailgating incident.  (Doc. 27-6, at 2-3).  While the *quantity* of Mr. Moten's alleged misconduct is greater than the number of Allen's transgressions, the court FINDS that Allen's misconduct is too dissimilar in *quality* to compare to Mr. Moten's alleged but disputed misconduct: Mr. Moten was not terminated for intentionally harassing a female citizen on the road in violation of Maverick's safety policy.

      Maverick then offered Lionel Hinojosa (Doc. 27-6, at 4-9 & 27-7, at 1-6) and Christopher Kooymans (Doc. 27-7, at 7-9; 27-8, at 1-9; 27-9, at 1-4) as similarly situated comparators. Hinojosa's employment  records dated May 7, 2013 reflect that he was on leave beginning April 12, 2013 and that he did not return from leave on May 6, 2013 as expected and did not return supervisor phone calls.  (Doc. 27-7, at 6).  The employment records of Kooymans show that he was terminated in November 18, 2013 for violation of the leave policy in failing to make required calls checking in with the company.  (Doc. 27-9).  Mr. Moten argues persuasively that these employment actions were not truly terminations but were simply formalization of these

employees' act of quitting, i.e., never returning from leave.  Even assuming *arguendo* that these situations do represent "terminations," the court FINDS that the misconduct of failing to return from leave is not similar to Mr. Moten's alleged but disputed misconduct and that Maverick has not proven that Hinojosa and Kooymans are similarly situated comparators.

Fourth, Maverick offered as a comparator Darryl Russell, whom Maverick terminated after he committed misconduct while on probation.  Russell was placed on an 180-day probation after he had been involved in March of 2013 in a "DOT Recordable Crash," striking a bridge and damaging the trailer and receiving a citation for driving on a non-truck route.  Then, in July 2013, while still on probation for the March 2013 incident, he failed to deliver a load but instead drove the load 437 miles off-route without permission.  (Doc. 27-9, at 5-9; & 27-10, at 1-9).  The court FINDS that Mr. Russell is not a similarly situated comparator as he was already on probation when he committed the further misconduct of driving 437 miles off-route and failing to deliver his load; that his misconduct is not otherwise similar to the alleged and disputed misconduct of Mr. Moten.

Fifth, Maverick offered as a comparator Brandon Bishop, whom Maverick terminated on March 28, 2014 for multiple incidents of disrespectful communications with his supervisors and/or co-employees on January 30, 2014, on March 24, 2014, and on March 28, 2014; Bishop also had a history of complaints:  customer complaint on January 30, 2014 regarding Brandon's disrespectful and inappropriate behavior and unsafe driving practices resulting in a "last warning"; a preventable accident caused by improper backing on June 21, 2013; a preventable overweight citation on March 24, 2014; and a speeding ticket on March 28, 2014.  (Doc. 27-11, at 1-11).  The court FINDS that Mr. Bishop is not similarly situated to Mr. Moten as the

misconduct for which he was terminated focused around his disrespectful and unprofessional communications with his supervisors and co-employees, conduct for which he had received a "last warning," whereas Mr. Moten did not receive a last warning before termination and was not disciplined for disrespectful and unprofessional communications.

Sixth, Maverick offered as a comparator Kevin Howell, whom Maverick terminated on February 12, 2014 after he was the subject of two complaint calls in two different states in February of 2014. The first call was a complaint to the Wyoming police that Howell drove a motorist off the road in Wyoming, resulting in Howell's being pulled over by a policeman (which Howell failed to timely report to Maverick). The second complaint came from a Washington caller, stating that Howell was weaving through traffic at a high rate of speed and driving in a restricted lane with a broken windshield and missing tail light. Howell also caused two preventable accidents from inattention in December of 2013 and in January of 2014; and he received a citation for running a stop sign in December of 2013. (Doc. 27-12, at 1-6). The court FINDS that the quality and quantity of Russell's misconduct is not similar to the alleged but disputed misconduct of Mr. Moten, and thus, he is not a similarly situated comparator.

Seventh, Maverick offered as a comparator Kelvin Murphy, whom Maverick terminated on January 6, 2014. That termination occurred after a no-fault damage claim on December 30, 2014, when Murphy failed to promptly comply with instructions about what to do with his product and to communicate that he had completed his instructions. These failures were the culmination of a month of misconduct during December of 2013: he gave conflicting excuses for being unable to drive a load (one involving stomach issues and the other involving a hurt back); he deadheaded his truck—i.e. drove his truck without a load—without Maverick's permission;

and he mismanaged his time and failed to make a timely delivery. (Doc. 27-13, at 1-5). The court FINDS that Murphy is not a similarly situated comparator; Mr. Moten did not give conflicting excuses, had no similar communication issues, and no record exists that he deadheaded his truck without permission.

Finally, Maverick pointed to Debbie Sunior, whom Maverick terminated on January 31, 2014 for several issues, including volatile behavior. She became lost on a trip for lack of navigational planning and suffered a "melt down" on January 30, 2014; decided on one occasion to stop driving to her destination even though she had time left; yelled at her fleet manager when she began running low on fuel; and demanded that someone from Maverick go with her to put fuel in her tank. (Doc. 27-14, at 1-5). The court FINDS that Sunior is not a similarly situated comparator to Mr. Moten; Maverick does not provide evidence that he had any of the behavioral issues that Sunior exhibited.

The court notes that the records of Bishop, Howell, Murphy and Sunior do not reflect that Shoults—the supervisor making the termination decision or heavily involved in the termination decision regarding Mr. Moten—was involved in their termination decisions. Because Mr. Moten testified that Shoults made his termination decision unilaterally, Shoults's lack of involvement could support yet another argument that these employees are not appropriate comparators to Mr. Moten. The court need not decide this issue because, in any event, their misconduct is not sufficiently similar to the alleged but disputed misconduct of Mr. Moten.

In sum, Maverick has presented evidence of other terminations, but, those terminated employees are not similarly situated to Mr. Moten, and their misconduct was not sufficiently similar to the misconduct that Maverick attributes to Mr. Moten. Therefore, their terminations

14

cannot support Maverick's burden of showing that it would have terminated Mr. Moten for reasons other than his military status. Simply showing that Mr. Moten committed numerous infractions–misconduct that Mr. Moten specifically disputes—does not establish as a matter of law that Maverick would have terminated him based on those infractions alone. Without evidence that Mr. Moten's deficient performance merited his termination under Maverick company policies and/or that Maverick discharged similarly situated drivers, Maverick has not established its affirmative defense as a matter of law.

Therefore, as an *alternative* ruling, the court RECONSIDERS Maverick's motion for summary judgment based on the additional evidence, but FINDS that, in light of that additional evidence, the motion for summary judgment is due to be DENIED.

The court leaves the questions of fact and credibility for the jury, and this case will proceed to trial.

Dated this 30th day of October, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE